Dwight Edward PLUMMER a/k/a Robert Keith
REDMON *v.* STATE of Arkansas

CR 80-37                                      603 S.W. 2d 402
Supreme Court of Arkansas
Opinion delivered August 25, 1980

*Warren H. Webster*, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, for appellee.

JOHN F. STROUD, Justice. Appellant was convicted of burglary, aggravated robbery, and of being a felon in possession of a firearm. From an aggregate sentence of 20 years and a $1,000 fine, appellant brings this appeal alleging four points of error. Finding no merit to appellant's contentions, we affirm the jury verdict.

The home of Rosalie Cheatham was broken into on July 9, 1979, just before 11:00 p.m. The intruder cut through the

lower section of a locked screened-door and walked in a crouched position approximately six feet into the house to seize some cash and a purse, all the while pointing a pistol at Ms. Cheatham and her mother, Marie. Marie Cheatham was in the family room watching television when the intruder entered and, upon seeing him, screamed at him to get out of the house. This alerted Rosalie Cheatham, who was in the kitchen adjacent to the family room, and she came immediately. Although her mother was unable to see much of the intruder's face due to a straw hat pulled down low on his brow, Rosalie Cheatham testified she was able to observe his facial characteristics for at least 45 seconds. She testified that she got a good look at his right profile and as he was leaving, he was fully in view. After grabbing the purse and money, the intruder backed out of the hole he had cut in the screen, but lost his hat in the process.

The purse was discovered the next morning in a Little Rock housing project, lying near a trash bin with the contents scattered around it. The police were called and the purse and its contents returned to the Cheatham home. While checking to see what was missing, Rosalie Cheatham found a payroll check stub that had not previously been in her purse. Investigation by the police revealed that the check stub was from a payroll check paid to appellant by his employer. Appellant denied any involvement in the robbery, claiming that he had spent the night of July 9 at his sister's apartment in the project and, upon leaving for work the next morning, stopped by the trash bin to clean out his car. He admitted seeing the purse and briefly looking through it, but claimed it was the only time he had ever seen the purse. At a line-up three days after the robbery, Rosalie Cheatham identified appellant as the man who had robbed her. On October 9, 1979, appellant was tried before a jury and, despite several alibi witnesses on his behalf, was convicted of all three charges. He was sentenced to five years for burglary, 10 years for aggravated robbery and five years for felon in possession of a firearm, to be served consecutively, and was also fined $1,000 for aggravated robbery.

Appellant first contends on appeal that the line-up from which he was indentified was unfair in that it was conducted in

a manner calculated to result in his being identified as the robber. The main thrust of his argument is that he was made to participate in the line-up dressed in clothing almost identical to that which Rosalie Cheatham had described the robber as wearing, and that none of the other five men in the line-up were similarly dressed. It is well-settled that any line-up to which an accused is submitted must meet due process standards of fundamental fairness and not be arranged in such a way as to be impermissibly suggestive as to the person pointed out by the witness. *U.S.* v. *Wilkerson*, 453 F. 2d 657 (8th Cir. 1971), cert. denied 405 U.S. 1071 (1972); *Foster* v. *California*, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969); *Simmons* v. *U.S.*, 309 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). Any claim of unfairness must be evaluated in light of the totality of surrounding circumstances. *Simmons* v. *U.S.*, supra. In the present case, appellant's claim of impermissible suggestiveness stems solely from the similarity of his clothing to that of the intruder as described by Ms. Cheatham. However, she testified that the clothes were of very little significance (no more than 2%) in her identification of appellant at the line-up; that "the face was the primary thing that I saw . . . and I riveted my attention toward the eyes." She stated that she was great at faces, having acquired that ability through the years as a college professor to recognize the students in her classes. Furthermore, Ms. Cheatham never faltered in her certainty that appellant was indeed the person who robbed her, even when advised of the possibility of his receiving a sentence of life imprisonment if convicted. It is most significant that the police did not make appellant dress in clothing similar to that of the intruder. They merely brought him from a cell where he was being held on a traffic charge and he was already wearing the clothing. We are unaware of any authority requiring the police to have a suspect change out of his street clothes before appearing in a line-up. We cannot say that the line-up in question was conducted in an impermissibly suggestive manner.

In his second point appellant asserts that the trial court erred in allowing the prosecutor to refer to previous convictions of appellant prior to the introduction of any evidence tending to show that he actually had been previously convicted of a felony. Appellant cites no authority to support this

contention, and we find none. As the prior felony conviction was an element on one of the offenses with which appellant was charged, it was certainly not improper for the prosecutor to refer to the previous conviction prior to the introduction of direct proof so long as competent evidence was later presented to support the statement.

Thirdly, appellant urges for reversal that the trial court erred in allowing a copy of appellant's judgment of conviction and a copy of the pertinent criminal docket sheet to be introduced into evidence. Appellant bases this argument on the grounds that he was not advised that these matters would be introduced by the State, contrary to Rule 17.1 of the Arkansas Rules of Criminal Procedure, and that no proper witness was called by the State to introduce these documents. Rule 17.1 provides, in pertinent part, as follows:

> (a) . . . the prosecuting attorney shall disclose to defense counsel, *upon timely request*, the following material and information . . ."
>
> . . .
>
> (v) any books, papers, *documents*, photographs or tangible objects, which the prosecuting attorney intends to use in any hearing or at trial . . . (Emphasis added.)

As there was no request by defense counsel as contemplated in Rule 17.1, it can hardly to said that the rule was violated. Additionally, as the prior conviction was an element of one of the offenses charged, appellant was obviously put on notice that evidence of the conviction would be presented at trial. Appellant's other contention on this point, that the State erred in failing to call a proper witness to introduce the documents, must also fail. Both documents were properly certified, and the trial court *sua sponte* took judicial notice of the authenticity of the judgment of conviction and docket sheet. We find no error in that action.

Appellant's final contention is that it was error for the trial court to allow into evidence appellant's pay check stub which was found by Rosalie Cheatham in her purse after it

was returned to her. Again, appellant offers no authority in support of this assignment of error. The presence of the check stub in the purse was circumstantial evidence tending to link appellant with the crime, although the jury heard appellant's testimony offering an explanation as to how the check stub could have become intermingled with the contents of Ms. Cheatham's purse. It was for the jury to resolve this evidence and attach the degree of credibility they felt it deserved. In *Parker* v. *State*, 266 Ark. 13, 582 S.W. 2d 34 (1979), a rape case, the trial court properly allowed into evidence metal flakes found on the bed on which the rapes occurred as they were similar to metal flakes found on the defendant's clothing at the time of his arrest. Here, as in *Parker*, the evidence under attack was merely circumstantial, but in neither case was it without relevancy. Accordingly, it was not error for the trial court to admit the check stub into evidence.

As we find no merit in appellant's points for reversal, we affirm the judgment of the trial court.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, dissenting. I believe the lineup as conducted was unduly suggestive. The only manner in which it could have been more indicative would have been to have placed a sign around the appellant's neck that stated, "This is the one." The appellant was the only person dressed in clothing similar to the attire the robber was wearing at the time of the alleged crime. The least they could have done was to have the others dressed in similar attire.