Herbert MALONE *v.* STATE of Arkansas

CR 86-206                                              729 S.W.2d 167

Supreme Court of Arkansas
Opinion delivered May 18, 1987

*William L. Wharton*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was convicted in the Pulaski County Circuit Court of aggravated robbery, aggravated assault and theft of property. The information charged appellant as an habitual offender, alleging that he had committed "four or more" previous felonies. For reversal he argues: (1) that the court erred in failing to suppress real evidence; (2) that the court erred in refusing to grant a continuance; and (3) that the court erred in allowing evidence of more than four previous convictions in the sentencing phase. The sufficiency of the evidence is not argued on appeal. We do not find reversible error.

A branch of First Federal Savings and Loan Association in Little Rock, Arkansas, was robbed on April 8, 1986. During the investigation immediately following the robbery, the officers identified the appellant as a suspect and determined that he was on a bus headed for Memphis, Tennessee. The Tennessee authorities were advised by the Arkansas police that an Arkansas arrest warrant had been issued. Shortly after appellant arrived in Memphis, the local officers took him into custody. The appellant's person was searched during the arrest. The officers found a locker key on appellant and used that key to open a locker in the Memphis bus station. The locker contained cash and travelers checks stained with red dye and a handgun.

On the day the trial began the appellant moved for a continuance in order to obtain the presence of witnesses from New Jersey. The request for a continuance was overruled on the

grounds that there had been no prior request that the out-of-state witnesses be subpoeaned. At the trial the items found in the bus station locker were introduced into evidence. Several officers gave detailed testimony that the appellant voluntarily signed a consent to search form before they opened the locker. The appellant also testified at his trial and contradicted the officers' testimony. (He had not testified at the hearing on the original motion to suppress.)

The information had alleged that the appellant had been previously convicted of "four or more felonies." However, during the penalty phase of the trial the state was allowed to introduce eight prior felony convictions.

We first consider the argument that the evidence found in the locker at the bus terminal should have been suppressed. The chief argument is that the show of force by several officers induced the appellant to agree to sign the consent to search form. For this point he relies upon *Rodriquez* v. *State*, 262 Ark. 659, 559 S.W.2d 925 (1978). *Rodriquez* held that a voluntary consent to search must be proven by clear and positive evidence. In *Rodriquez* the appellant had been surrounded by armed officers and when he questioned the authority for the search, one of the officers "patted his gun and stated that was all the search warrant he needed."

The facts of the present case are completely different. When one of the arresting officers sought permission to search the locker, the appellant initially refused and stated he wanted to contact federal authorities. A guard was then placed by the locker in order to secure the evidence while applying for a search warrant. The appellant then changed his mind and agreed to sign the consent to search form. (At trial several officers confirmed the voluntary execution of the consent to search form.)

The burden of proof on the issue of a voluntary consent to search cannot be discharged by the state by merely showing that the accused acquiesced in the search. It must also be shown that there was no actual or implied duress or coercion. *White* v. *State*, 261 Ark. 23, 545 S.W.2d 641 (1977). The evidence in this case shows that Officer Bartlett approached the appellant and asked him to step outside the station. The appellant then identified himself and was placed under arrest. Other

officers were nearby, but out of precaution they remained at a distance until after the arrest. There is no evidence in the record to indicate that the officers either coerced appellant or used any kind of improper influence whatsoever. Certainly the testimony of the five officers present at the scene satisfies the state's burden. The trial court therefore correctly concluded that there was no basis for the suppression of the evidence obtained from the bus terminal.

Appellant's second argument is that the court erred by failing to grant a continuance. Prior to trial both the appellant and his attorney sought to discontinue the attorney/client relationship. The requests were denied. On the day of the trial, the appellant sought to obtain a continuance in order to secure the testimony of out-of-state witnesses. (The appellant wanted to call his mother and his sister as witnesses, and he stated they could not be present until the following week.) No previous mention of the need to call these witnesses had been made to the state or defense counsel. The normal procedure for obtaining attendance of such witnesses is set out in Ark. Stat. Ann. § 27-1403 (Repl. 1979). Such procedure was not followed. In the present case no justifiable excuse was offered for the failure to make an effort to have the witnesses present until the day of the trial. Without citation of authority, we have no hesitancy in holding that the trial court did not abuse its discretion in denying a continuance.

The final argument is that the court erred in instructing the jury that appellant had eight prior felony convictions when the information alleged "four or more." Our prior decisions relating to the number of prior convictions that can be introduced in the penalty phase may have resulted in some confusion. We take this opportunity to clarify the correct procedure for introduction of prior convictions.

The law in effect at the time of the offense, Ark. Stat. Ann. § 41-1001 (Supp. 1985), controls the number of prior convictions which may be introduced for enhancement purposes. The statute states, in pertinent part:

> (1) A defendant who is convicted of a felony committed after June 30, 1983, and who has previously been convicted of more than one (1) but less than four (4) felonies, or who has been found guilty of more than one (1) but less than

four (4) felonies, may be sentenced to an extended term of imprisonment as follows:

. . .

(2) A defendant who is convicted of a felony committed after June 30, 1983, and who has previously been convicted of four (4) or more felonies, or who has been found guilty of four (4) or more felonies, may be sentenced to an extended term of imprisonment as follows:

. . .

Under the foregoing statute there are really only two possible enhanced punishment ranges. The first is the range of punishment for those who have been convicted of, or found guilty of, more than one, but less than four, felonies. The second punishment range is for those who have been convicted or found guilty of four or more felonies.

We considered the enhancement provisions in *Clinkscale* v. *State*, 269 Ark. 324, 602 S.W.2d 618 (1980). There we said that prior convictions are like essential elements of an offense, inasmuch as they must be specifically alleged in order to be introduced at trial. In *Clinkscale* the appellant had been charged with "two or more" prior felonies. During the sentencing procedure, the state moved to introduce five prior convictions. The defendant objected to this procedure, stating that the state was limited to the introduction of two felonies. The trial court recognized that five priors would increase the punishment range of allowable imprisonment and rejected the proof of "more than two" prior felonies. We reversed because we found that the trial court had actually considered more than two prior felonies.

The number of allowable prior felonies was again considered by this Court in the case of *Reed* v. *State*, 282 Ark. 492, 669 S.W.2d 192 (1984). The *Reed* opinion attempted to distinguish between "more than two" and "two or more" prior offenses. We take this opportunity to clarify when and why such distinctions may become important. For the purposes of the application of the enhancement statute, we hold that there is no distinction between "two or more" and "more than two" or "four or more" and "more than four."

The statute controlling the appellant's case is set out above. The *second* and *fourth* finding of prior guilt or conviction places the defendant in a higher range for the purpose of enhancement of punishment. It would be error to allow the state to prove "four or more" priors when the information charges the defendant with only "two or more" felonies because a more severe range of punishment for the offense is invoked when four or more priors are established. When the state alleges "two or more" prior felonies, the accused is justified in believing that he will not have to face the introduction of "four or more" prior convictions at trial. On the other hand, if the state alleges "four or more" there is no limit to the number which may be proven.

The accused is, however, entitled to know before trial the range of possible punishment that he faces. A.R.Cr.P. Rule 17 requires the prosecutor, if requested, to disclose the names and addresses of all witnesses to be called, and to identify any books, papers, documents, or tangible objects to be introduced. Under this rule of criminal procedure, the accused is entitled to know before trial the number of previous convictions the state will attempt to introduce. These discovery rights can be waived if the defense does not utilize them. *Plummer* v. *State*, 270 Ark. 11, 603 S.W.2d 402 (1980). The information requested must be furnished in sufficient time to permit the beneficial use of it by the defense. *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985).

In the present case the appellant did not attempt to determine pursuant to Rule 17 discovery procedures the exact number of prior felonies that would be considered. The proving of eight prior convictions instead of four did not add an element to the offense or change the range of punishment. Therefore, there has been no showing of prejudice to the appellant.

Affirmed.