Terry HARDIN and Danny J. Fields *v.*
STATE of Arkansas

CA CR 93-259                                           872 S.W.2d 861

Court of Appeals of Arkansas
Division I
Opinion delivered March 23, 1994

*Lohnes T. Tiner*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellants Terry Hardin and Danny J. Fields were tried for first degree murder along with Toby Hardin, Jr. and Jackie Hardin. The jury found Toby Hardin, Jr. not guilty; Jackie Hardin guilty of second degree murder; and both appellants guilty of manslaughter. Each appellant was sentenced to three years in the Arkansas Department of Correction. On appeal they argue only that the trial court erred in refusing to grant a mistrial after the judge made a statement in the presence of the jury which, they contend, was a comment on the testimony.

Mistrial is an extreme and drastic remedy and is proper only if the action on which it is predicated has infected the trial with so much prejudice to the defendant that justice cannot be served by a continuation of the trial. *Pickens* v. *State*, 301 Ark. 244, 783 S.W.2d 341 (1990). Since the trial judge is in a superior position to assess the possibility of prejudice, he is vested with great discretion in acting on motions for mistrial, and this court will reverse only where that discretion is manifestly abused. *Jimenez* v. *State*, 24 Ark. App. 76, 749 S.W.2d 331 (1988). In addition, a mistrial should be granted only when any possible prejudice cannot be removed by an admonition to the jury. *Wheat* v. *State*, 295 Ark. 178, 747 S.W.2d 112 (1988).

The facts in this case are not crucial to the determination of the issue on appeal. Briefly, the defendants were all present at the home of Ricky Hargo in the early hours of the morning of December 29, 1991. There was a fight and Hargo was stabbed in the throat with a knife, causing his death.

Appellant Terry Hardin was testifying for the defense when the following exchange took place.

BY MR. TINER [DEFENSE COUNSEL]

Q.    Now, you said that you knew you were on Ricky Hargo's property?

A.    Yes, sir.

Q.    You knew your wife was over there, too, didn't you?

A.    Yes, I did.

Q.    And you knew that she really didn't have any business over there?

A.    Yes, sir, I knew that.

Q.    And that bothered you?

A.    Yes, sir, it did, bad.

MR. HUNTER [PROSECUTOR]: Your Honor, will the Court caution Mr. Tiner about leading this witness? Let the witness testify.

THE COURT: Yes, Mr. Tiner, avoid leading.

MR. TINER CONTINUING:

Q.    Would you tell us, please, whether or not it bothered you to know that your wife—

MR. HUNTER: That's repetitious, Your Honor. The witness has already answered that question.

MR. TINER: Well, I hadn't finished my question, Judge.

THE COURT: I think it's been asked and answered. You told him and he ratified. So, let's move it on.

MR. TINER: Let me have— I believe I have a motion I need to make, Judge.

THE COURT: All right.

(THEREUPON, the following conference was had at the bench outside the hearing of the jury.)

MR. TINER: At this time the defendant would move for a mistrial for the reason that the Court has stated that I told the defendant something and that is a comment on the evidence and that is highly prejudicial and we are asking for a mistrial at this time because the Court made a comment upon the evidence.

THE COURT: Your motion for a mistrial is denied. Mr. Tiner, you have been throughout all these defense witnesses['] testimony leading grossly. For example, you asked this witness—

MR. TINER: Wait, wait. Judge, I don't need this in here. If you're going to proceed with this I'd rather we be in chambers.

THE COURT: Nobody can hear this excepting you. You told this witness, did you see Ricky jump off the porch onto him and stab Jackie. He says no, I didn't see that, but that's grossly leading and you have been grossly leading permitting and inviting them to answer or ratify. It was not a comment on the evidence, it's merely a ruling on your admission and a caution against repeated leading.

Appellants argue that the statement the judge made was a comment on the evidence and warranted a mistrial. Appellants take the position that "I think it's been asked and answered," indicates that the unfinished question has been answered; and that, "You told him and he ratified," is a comment on the evidence. Appellants say it is a comment on the way the evidence is being elicited and a comment that would tend to indicate to the jury that counsel was telling the witness what to say. Further, appellants argue, by using the word "ratify" instead of the word "answer" the court commented not only upon the evidence but upon the weight of the evidence. They contend there is a significant difference between telling the jury that a witness testified to a fact and saying that a witness ratified a fact.

In support of this argument appellants cite *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973); *Oglesby v. State*, 299 Ark. 403, 773 S.W.2d 443 (1989); *Jones v. State*, 301 Ark. 530, 785 S.W.2d 218 (1990); *Chapman v. State*, 257 Ark. 415, 516 S.W.2d 598 (1974); and *McAlister v. State*, 206 Ark. 998, 178 S.W.2d 67 (1944). These cases are distinguishable.

In *West v. State, supra*, the trial court had directly questioned a witness. The Arkansas Supreme Court reversed the conviction because of a question by the trial judge. The court said:

Even though we are confident that the judge in this case had no intention of invading the province of the jury in its evaluation of Stracener's credibility and weighing his testimony, the question "How much were you paid to come up with this information?" could only have the effect of

intimating that the trial judge believed the witness' testimony was of questionable value.

255 Ark. at 673, 501 S.W.2d at 774.

In·*Oglesby* v. *State, supra*, an obscenity case, during the viewing of certain pornographic films the trial judge, within the hearing of the jury, said, "I'm feeling ill. How much longer[?]" In reversing, our supreme court stated:

No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. In recognition of the great influence a trial judge has on a jury, we have stated that the judge should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might intend to influence the minds of the jury. A comment by the trial judge expressing his opinion as to facts or evidence presented to the jury is reversible error.

. . . As the trial judge instructed and the state argued in this case, two of the elements of the crime with which the appellants were charged — promoting obscene materials — require that the jury find that the materials depict in a patently offensive manner sexual conduct, and appeals to the prurient interest of the average person. The trial judge's comment obviously reflected his own feelings on these legal aspects in the case, and as a consequence, may have influenced the jury's decision.

299 Ark. at 407, 773 S.W.2d at 444-45. (Citations omitted.)

In *Jones* v. *State, supra*, during voir dire of the jury, the trial judge told a potential juror, whose car had been burglarized, that the attorney general had said it would be against the law to shoot someone who was breaking into your car, but the judge said he did not think that was the law. He then asked the jury panel how many of them would convict someone who shot another person caught breaking into their car. The Arkansas Supreme Court held the judge's comments constituted "error *per se*." It stated:

We have consistently acknowledged the great influence that a trial judge has on jurors. He must. therefore, refrain

from impatient remarks or unnecessary comments which might indicate his personal feelings or which might tend to influence the minds of jurors to the prejudice of a litigant.

The trial judge is the one person who controls the conduct of all participants in the course of a trial, from beginning to end, and instructs the jury regarding the law which must be applied to the facts. Hence, a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case.

301 Ark. at 533-34, 785 S.W.2d at 220. (Citations omitted.)

In *Chapman* v. *State, supra*, there was friction between the trial judge and the defendants' attorneys. Most of the conflicts between court and counsel took place outside the presence of the jury, but there were two exchanges that were witnessed by the jury. Confusion arose about the exhibit numbers of certain pictures and the court said, "Now, Mr. [Defense attorney], you know how to conduct yourself in court." Our supreme court said that there was no basis for the court's implication that the attorney had not conducted himself with propriety. The second incident occurred while another defense attorney was questioning a police officer.

Q. So up to the point where he took his shirt off, in your judgment, he had not done anything to cause you to arrest him?

THE COURT: The witness will not answer the question. It is repetitious. It is not a matter for the judgment of this witness, but it is a matter from all the facts that the jury will determine.

257 Ark. at 419, 516 S.W.2d at 601. Our supreme court held that the motion for mistrial should have been granted. It stated:

As we said in *Western Coal & Mining Co.* v. *Kranc*, 193 Ark. 426, 100 S.W.2d 676 (1937), and repeated in *McAlister* v. *State*, 206 Ark. 998, 178 S.W.2d 67 (1944): "No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the

jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury."

In the case at bar the trial judge's reprimand in each instance was unnecessarily severe and critical, as there had been no conduct on the part of counsel calling for such a rebuke.

257 Ark. at 420, 516 S.W.2d at 602.

In *McAlister* v. *State, supra*, the trial court told counsel within the hearing of the jury, "To grant your motion would be just silly," and, when counsel objected to the remarks of the court, "I am not going to put up with any more of this foolishness." 206 Ark. at 1002, 178 S.W.2d at 69. The Arkansas Supreme Court held that the unfortunate wording could lead the jury to believe that the motion was silly and that the court was belittling the motion and holding counsel up to ridicule for having made it; therefore, it was a reflection upon counsel's knowledge and skill as an attorney and indicated that he was guilty of improper conduct. Furthermore, when counsel objected to the judge's remarks, his comment constituted an unmerited reprimand and prejudicial error calling for reversal. 206 Ark. at 1003, 178 S.W.2d at 69.

█ It has been held, however, that remarks by the trial judge which are not inaccurate in summing up the proof, do not constitute a comment on the evidence. *Weatherford* v. *State*, 286 Ark. 376, 692 S.W.2d 605 (1985). *See also, Hill* v. *State*, 258 Ark. 164, 522 S.W.2d 660 (1975), in which it was held that the State's characterization of appellant, who was fairly active in the sale of marijuana, as a "drug pusher" was a fair comment on the evidence; and *Conley* v. *State*, 267 Ark. 713, 590 S.W.2d 66 (1979), where the Arkansas Court of Appeals held that where the trial court's remarks were merely a restatement of the witness's testimony and did not constitute a comment on the evidence.

█ It has also been held that a comment by the trial judge is not prejudicial when the evidence of guilt is overwhelming. *Harris* v. *State*, 273 Ark. 355, 620 S.W.2d 289 (1981). There, at the beginning of a thirteen-year-old girl's testimony, she had to be

calmed down by the trial judge. When her testimony was concluded the judge told her, "You did a good job." Appellant sought a mistrial arguing that this was a comment on the child's credibility. Our supreme court held that because the evidence against the appellant was overwhelming and the child was not a "material witness" any possible error was harmless when considered in the context of the entire record. The court cited the test set out in *Walker* v. *Bishop*, 408 F.2d 1378 (8th Cir. 1969).

> [T]he only way to ascertain the true meaning or import of any isolated remark is to consider it in the light and context in which it is uttered. This is just plain common sense as well as good law.

273 Ark. at 357, 620 S.W.2d at 290.

Here, we do not think the cases cited by appellants require reversal of their convictions. The trial court accurately stated that the question had been asked and answered several times and that the appellant had admitted it bothered him that his wife was with another man. Appellants make much of the usage of the word, "ratified." According to Black's Law Dictionary 1135 (5th ed. 1979), "ratify" means "To approve and sanction; to make valid; to confirm; to give sanction to. See *Approval; Confirm; Ratification*." Under the circumstances in this case, we do not believe the use of the word "ratified" prejudiced the appellants, and we do not think the trial court erred in refusing to grant a mistrial.

Affirmed.

JENNINGS, C.J., and COOPER, J., agree.